Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. Bossage, United States, in this kind of a court. May I, Your Honor, may I begin? Yes, please, Mr. Fletcher, go ahead. My apologies. May it please the court, my name is William Fletcher. I represent Appellant Anne Richard. This case is about a child's determination of a child's habitual residence. We have arrived here from the Southern District of Florida after an adverse decision for us. I would like to begin with my first issue in the brief, and that was that the district court erred in determining that the child's habitual residence was not Florida and instead indicated that it was found that it was Canada. Mr. Fletcher, if I can just specifically to that point, is your argument that the child's habitual residence was never Canada or that it changed to Florida given the timing and age of the child? It changed to Florida. And I would point out that the child spent three quarters of a year after birth in Canada, and then the family traveled a little bit and ended up in Southern Florida, where the child has continued to be until the adverse decision in April 2024, which is around three years. So I would ask the court to weigh that heavily. I also believe that if all of this court did was look at Mr. Horatio's actions while he was in Florida, it would establish a clear intent to become a Florida resident permanently. I should point out that they had a lease for an apartment in Canada, which they terminated several months early. And more importantly, they did not go and get a new lease. What do we do, though, where there seems to be some conflicting evidence about intent? You certainly point out some things that would indicate, and if I was sitting as a trial court judge, I might hear the same facts and might have reached a different conclusion than Judge Moore did here. But there are some contrary facts. For example, I'll mention a few of them that the district court mentioned. When your client and the child came into the United States, they signed B-2 visas, which averred, that is, swore to the government that they were here temporarily. You wouldn't be able to get that visa if you hadn't done that. That's one example. Another is your client rented a place to keep all the furniture in a storage facility in Canada, never seeking to bring down their things to the United States. Those both seem to indicate a temporary intent to be here and not a permanent intent to change residents from one to the other. What do we do when we have those sorts of conflicting facts? Well, Judge, it's within your discretion on how you look at those facts, but I would say that when a person first comes to this court… I'm sorry to interrupt you there. I don't know that it's within our discretion. Those are just the facts. I don't have anything with the record. My question is, where you have two sets of facts, one seeming to give one inference and one seeming to give another inference, isn't it exactly the role of the district court judge, the trial judge, to hear that and make a call? And my review on that is either for clear error, if it's a pure fact. Here, I think you correctly point out it's a mixed fact. But still, where you have those two sets of evidence, how can I say that there's error by the district court? Judge, I think you said it yourself. You indicated that you can draw two inferences from a lot of these facts. Let me be clear. There's a lot of facts. Some draw one inference, some draw another. So your client swearing on an immigration form that she's here temporarily, there's no opposite inference of that. That's only one inference. But you're right that there's some evidence that seems to infer different evidence that seems to infer something else. How can we say that the district court erred where there's these competing inferences? Because your question sort of assumes that once you arrive in the United States, you can't change your mind and say, I would like to now become a permanent resident of the United States and follow that application process, which is exactly what they did. So maybe at the time, that wasn't the case. When was that? I'm curious when was that? Because as I understand it, what happened is in October of 2001, so about six months in, they applied for citizenship. But that isn't an intent to stay here. In fact, the opposing counsel's client here is a U.S. citizen but has no intention of staying in the United States. So citizenship isn't an intent to stay. Where did they tell the government, hey, I lied to you originally or my intent has now changed and now I intend to remain here permanently? Well, again, Judge, I don't think that that was a lie at the beginning. It's just a change of circumstance. Her family's down here in South Florida. She came here. She may have initially said, I'm going to go back, and I swear to that, but she changed her mind and then she started that application process. Again, she started a citizenship application process in October of 2001 that ultimately was withdrawn in January of 2001. Citizenship is not an indication of intent to stay. Judge, I would disagree with you. I think her plan was to stay. She wanted to be a legal resident. She lived here. Her husband was applying for jobs here. They enrolled their older kid, GB, into school. The husband got a Florida driver's license. He checked the box that he wanted to start voting. What about all their things? What about all their things? It's not really an indication that you intend to stay somewhere where everything you own in the entire world is in a storage facility at another place. Correct, Judge. I agree with you wholeheartedly. What you do is you buy a condo in the city that you have decided to move to, and then you travel north, pick up your belongings, and bring them back down south. That's what I would say to that. You mentioned about your client's intent, but didn't the district court find her not to be credible? Like, how can we credit that testimony when she was found not to be a credible witness? There are instances where she was found not to be credible. On the very issue of what her intent was with regard to staying in the United States. That's the exact issue when she was found not to be credible. Then I believe that was a clear error. I think it was her intent to stay in the United States, as evidenced by everything she did. And frankly, it's evidenced by a lot of the things that Mr. Horatius did. They terminated a condominium lease up in Canada, and he didn't go up there and find a new condo for the family to live in. He came back south. And that, to me, evidences an intent to stay here. Mr. Newman did a fantastic job on his direct examination in explaining away the 10 different things that I will point to that establish his intent to stay here. He did a very good job of having his client explain away each one of them, but the totality of the circumstances indicate to me, and should indicate to this court, that he did intend to stay. He didn't apply for online jobs in Canada, he applied for online jobs in the United States. He did file his initial pleadings with the state court referencing the Hague Convention, and that was in error, apparently. That wasn't my question. The question is, wasn't he exercising his rights of custody as defined in the Hague Convention by insisting that his child return to Canada, by supporting the child, by sending plane tickets for the child to come see him in Canada? After he left, he started to evidence an intent to bring the child back to Canada, yes. But when he was there, he was living after, so he was kicked out of his house by the wife, but before that they were living together and he was exercising his rights of custody, was he not? Yes, I think they had a doctor appointment up in Canada and he was worried about getting the child to the doctor appointment. So yes, he was. You don't have a lot of time left, but I want to talk about the last issue, which is the affirmative defense here. Do you agree that because it was an affirmative defense, the burden rested on you and your client to show that the child was well settled? Yes, I do judge. I do agree that the burden switched to us to show that. The district court here found separately two things. One, that the child was not well settled and the other, that even if the child was within the court, the court still believed in the exercise of a discretion, the child should be returned. I read your initial brief to address the first point, but not to address that second point. What do we do with that? Well, judge, I think that the child was well settled. And by the time this adverse decision came down, the child had been here almost three years. She had been going to her own doctor here. They were going to daycare. No, I understand that. But the district court made a separate decision or a separate finding or conclusion that even if the child was well settled, in other words, agreeing with everything you've just said, that in as a matter of discretion, the child still should be returned despite the affirmative defense. You addressed that first point in your brief, the argument you just made here, but I don't read your initial brief to make that second argument. What do we do with that? I believe that the court should reverse that decision. The child was well settled in Florida for three years. So I don't think you're understanding Judge Locke's question. There are two sort of pieces to this. One, was the child well settled? Even if the answer to that question is yes, then the district court separately concluded that in an exercise of its discretion, it would sort of rule against you. And so if that's an independent basis for an affirmance, did you address that in the opening brief? And if not, what do we do with that absence? I can only say that it's my belief that the court abused its discretion in doing that. The child was well settled in Florida, has all her connections there, was living with grandparents and the mom. I just believe that's an abuse of discretion and that this court should reverse that. So because the district court disagreed with you on the well settled, that amounts to an abuse of discretion for the alternative ground the district court relied on? I'm trying to understand, I think, Judge Locke and Judge Newsom's question as well. And I guess my part of it is have you abandoned that? Well, one, if we agree with the district court, then you're done. But if we disagree with the district court on its ruling regarding being well settled, you haven't argued abuse of discretion? Or are you saying that your arguments regarding the well settled decision also pertain to the abuse of discretion? I believe that that is what I am arguing, Judge. In other words, if you determine as the district court judge that the child is well settled and has been here for three years and has all these ties to the community, why then would you say that and then send the child back to Canada? Just because you have the discretion to do that? Because the case law allows for that. I mean, that's where our circuit cases are and other circuits. I think the 8th and the 6th have also said courts have the right to exercise that discretion. And I'm not sure that arguing that a different finding should have been reached in terms of well settled equates to a finding of abuse of discretion at our level. Then, Judge, I will ask, I'll go out on a limb here and ask you to find that that was an abuse of discretion and that maybe trial court judges should not have that separate arm of discretion where they can find completely in favor of in one direction and then just reverse that and send the child back. So, I would ask that this court overrule its prior cases that allow a district court judge to do that. We can't hear you, Judge Newsome. Yeah, Judge Newsome, I think you're muted. Yeah, sorry. User error. I just wanted to tell Mr. Fletcher, you've reserved five minutes. We took you beyond your allotted time, so you'll have the full five on rebuttal. Thank you, Judge. Mr. Newman, let's hear from you. Good morning, Your Honors, and may it please the court. My name is David Newman of Holland and Knight on behalf of the appellee, Eric Coratius. Before I get into any argument on our side, I wanted to address a couple of points that first Judge Luck raised and then Judge Newsome and Judge Abuda raised afterwards. Judge Luck pressed Mr. Fletcher regarding the issue of the mother's intent when she entered the country. The fact of the matter is, Judge Luck is correct. The mother and the father both represented together to immigration agents that they were there temporarily. Mr. Fletcher argues today that, in fact, that was the intent when they entered the U.S. However, at some point after that, the mother changed her mind. The words Mr. Fletcher used was her plan, and I think that that is accurate. I think it was her plan. Yeah, but counsel, he points to, and I have to say, there is some significant evidence, maybe even compelling evidence, that the intent was at some point both jointly ripened into the decision to stay in the country. I'll read off some of the evidence. I won't read off all of it, but one of the ones that strikes me is the notary public petition. I mean, he has to state that I'm a resident of Florida by swearing to that. He got a driver's license. He registered to vote here. He was looking for jobs. I understand those jobs are remote, but he was looking for jobs in the United States, including with the United States government. So there's some significant evidence. In other words, his position is not a frivolous one, and I guess my question is, I see evidence on the other side of this. What do we do when the district court has some evidence indicating one thing, some evidence indicating another thing? Is that error? Do we review it as fact? It seems to be a mixed question of fact and law. How do we address that? It is a mixed question of fact and law, Your Honor, and you give deference to the district court's finding here and only review for clear error. What I was indicating earlier, and it goes to your point and to your question, the mother testified at trial unequivocally that when she entered the U.S., the intention was always for them to live there permanently. However, Mr. Fletcher now contests that actually that wasn't the case. They changed her mind. She changed her mind afterwards. Let me be clear. The mother was found not to be credible, and I think there's clear evidence to suggest that she wasn't. But what Mr. Fletcher says, his brief says, and what he says here is, even if you look at all the evidence related to the father, forget the mother, all the evidence related to the father, there's some pretty strong evidence to indicate that he, too, had the intent to remain or to be a resident of the United States. What do we do with that? Your Honor, you have to go with the district court's findings on that. The district court considered all evidence relating to the driver's license, relating to the notary. The district court considered all of that and looked at that in the totality of the circumstances and still determined that the mutual intent of the mother and the father was to be back in Canada. The fact is the district court made that determination and this court has to leave that determination untouched unless it finds clear error. And there is absolute, first of all, there is no error here, let alone any clear error. And there is plenty, significant, substantial evidence in the record showing that the intent was always to return to Canada. In fact, the mother testified at trial under oath that as late as January of 2022, the same month that the father was kicked out of the home, the mother testified that she told the father, Florida is a second option for our children, and as soon as the application is complete, we will go back to Canada and live together as a family. The mother testified to that unequivocally. There's significant evidence. Again, I will just emphasize, I think Judge Lux's point, which is excluding the mother's testimony and evidence, the father had submitted different applications to suggest he too intended to stay in the United States. And the question under clear error review is we have that conflicting evidence, evidence that suggests that the father did intend to stay in the United States and might have changed his mind and went back to Canada. What are we supposed to do with that evidence of the father's intent based on that documentation under clear error review? Well, Your Honor, based on the documentation, I believe you're referring to the notary and the driver's license. The father testified to this at trial and explained that all of these things he did was to, as a U.S. citizen, he was exercising his rights as a U.S. citizen to ensure that his temporary stay in Florida, albeit an extended temporary stay, was more comfortable. In addition, regarding the driver's license, the father testified that he did so in order to help the mother as far as the application for U.S. citizenship is concerned. Regarding the notary, he testified at trial that he applied for the notary license in order to, mistakenly, he believed that he could notary his own documents and that it would save them money and time. So he did these things in order to further the application and also to help make his temporary stay in Florida more comfortable. And he was only exercising rights that he has as a U.S. citizen. And as Judge Luck picked up on, the fact that the father is a U.S. citizen, the fact that he did these things has absolutely no bearing on whether he intended the habitual residence of the child to be Florida. And because there is so much evidence weighing against this and in support of the district court's findings, this court cannot touch the district court's decision unless there was clear error. And there is simply not clear error here. Let's talk about the well-settled, just for me, for my purposes. So let's get past this and the affirmative defense. There seems to be a lot of evidence, if you look at the factors, and I'm not sure we've ever adopted the factors that the district court used, but other courts have. If you look at the factors, they consider extracurricular activities, relationships with family members, length of stay, all of those things. A lot of them seem to weigh in favor of the child who was very young when the child came here, nine months or so, maybe a year old when the child came to the United States, that the child has significant connections when looked at the totality of the life at this point in the United States as opposed to Canada. What do we do with that? I get that, again, we're looking at mixed questions of fact and law here. What do we do with that and where there seems to be an overwhelming number of factors on one side over the other? I'm not sure that there is an overwhelming number of factors on one side than the other. The child has spent longer in the USA. That is a fact. However, the law is clear in Florida. You cannot create a habitual residence. I just want to push back a little bit on that. If you look at page 15 of docket entry 59, even the district court enlisting the factors put four factors on one side and two-ish on the other. That was even according to the proposed findings that you all submitted. Maybe overwhelming is not the right word, but certainly the weight of the factors would seem to stay on one side as opposed to the other. Why was the district court right to say the well settled where so many factors were on the other side of that? The district court's right for a couple of reasons. The first one being the young age of the child. As this court has recognized numerous times, the young age and infant relies heavily on their parents and the intention of their parents in order to create an environment. The fact is Mr. Fletcher stated that a three-year-old had a significant social circle. It's true that the child did attend daycare. However, a lot of the factors weighing in favor of Florida are also present in Canada. The child, before she had a doctor in Florida, saw a specialist in Canada for a medical condition that she was born with. She has family members in Canada. In addition to this, the well settled exception is discretionary. So even if this court determines, you know what, if I was in that position, I would have ruled and found that the child was well settled in Florida. Even with that, this court cannot overturn the district court's ruling unless there was clear error. So even if there was a factor that outweighed and this district court would have ruled another way, that is not clear error and this court cannot overturn the district court's ruling. In addition, as all of the judges before me have picked up on and that Mr. Fletcher has failed to address and in my opinion failed to address even today, the district court went a step further and said even if the child was well settled in Florida, the fact of the matter is to further the aims of the hate convention, I'm going to still order the return of the child to Canada. Mr. Fletcher hasn't addressed that apart from saying that the district court shouldn't be allowed to do that. He hasn't addressed any of those concerns. However, I do stand with the fact that the well settled exception, I don't believe the burden was met by the mother in this case and there are factors that overweigh it. And even if the child spent longer in Florida than she did in Canada, the case law is clear that length of time does not make a difference as far as the well settled exception is concerned. And as the district court found, even if there were ties to Florida, the ties were not significant enough in order for the mother to meet that burden. And the mother shouldn't be allowed to abduct the child or not abduct the child, I apologize, wrongfully retain the child in Florida and then say, hey, I've created this environment because I sent her to school and she goes to a doctor. That's to be considered by the court to in addition. But counsel, that's not quite what happened here. I mean, there may be cases like that, but but as I understand the facts, the father was kicked out of the house in January. He left the United States in February and even crediting the huge procedural mistake he made. I'm not sure that we should, but even crediting that it isn't until December that even inquires about making a petition for the return of the child. But by the time this thing gets litigated or we're here, it is years there and a court does need to consider. And in fact, is required to consider where the affirmative defense is raised, how this would affect the child him or herself, how how the child is going to react to to being taken away from the only home that that he or she ever knew and put to a place that she really doesn't know, at least at this point in the young life. So I that doesn't seem right to me that that that we don't consider this at all. I agree that once the petition is filed, then it isn't fair to attribute the time after that to the father, because that's not his responsibility at that point. That's the courts. But before that time, that is his fault, is it not? It's not his fault, your honor. Mr. Horatius was he was steadfast in his belief that he wanted to bring the child back to Canada, albeit a mistaken belief that he thought a hate petition was filed within a year. It was not. And I agree with this court on that. In addition to you were asking about the well-settled exception immigration status, this court has identified even in a recent decision with Coensa that that is a factor that should be determined. And Mr. Fletcher hasn't raised it today, but the immigration status of the mother and the child at issue is at best problematic. As the district court noted, the mother's application for citizenship can be denied at any moment. The fact that the mother, the district court has found that the mother and the mother has agreed and admitted under oath that there were inaccuracies in a document submitted to the U.S. immigration under oath. It although the district court did not determine whether the mother's application would be successful. I think there is absolutely uncertainty regarding that immigration status and the mother and the child could be moved back to Canada tomorrow. And that's something that this court should consider. The district court did consider because the mother may not be able to to live in in the U.S. regardless. And because of her immigration status, there is no way that the mother can create a permanent residence here and the child cannot be well settled with that looming. The district court, though, didn't make any conclusions regarding the immigration status, did it? It did not. But that is absolutely correct. However, the district court absolutely noted in the mother agreed during trial that there were multiple inaccuracies about some serious allegations. Certainly that goes to the mother's credibility, but I'm just not sure we can weigh the immigration part because the district judges, the district court itself said that it was not making a final call regarding the immigration status. Understandably, because immigration law is just very complicated. It is complicated. However, this court has written in the recent opinion that the mother's immigration, the child's immigration status is absolutely a factor that this court should consider. And that should come into this court's determination as well. So, your honors, because there was no error, let alone any clear error, we are asking that this court affirm the district court's ruling. The mother's appeal can be succinctly summarized. She disagrees with the district court's findings and that alone, even with everything presented is not enough for this court to overturn and find any clear error in the district court's ruling. The evidence submitted is significant and certainly significant enough in order to show that the district court considered everything the mother says it did not and it came to the correct ruling here. And I will leave with this, even if this court sitting here today disagrees with the district court's ruling and says, if I was ruling in the first instance, I would have gone a different way. That is not enough for this court to overturn the district court's findings. All right, very well, Mr. Newman, thank you so much for your presentation. Mr. Fletcher, you've got five minutes of rebuttal time. Thank you, your honors. Judge, I think one of the problems with this particular case, and we have to evaluate each case by itself and separately, is that things moved along a timeline. You might be correct that there was plenty of evidence up front that the intent was to go back to Canada. But as they stayed here longer and longer and longer, Mr. Horatio took all of the actions that a normal person would take to establish a permanent residence here in Florida. He got the driver's license. He checked the box that I want to vote, where I want to be registered to vote. There's no election for that week. There's no election two weeks later. But he's evidencing an intent to stay in the state of Florida. And I believe that over time, that's what this couple decided to do. And when things went bad in their relationship, he moved back to Canada, and he sat on his rights for a very long time. What's the point at which we should look at? And I'm asking because I honestly don't know. It seems to me that it's not fair to attribute to him this bureaucratic or diplomatic mistake of the petition actually having been filed, especially for a non-lawyer. It seems like the point at which he went to the embassy and said, I'd like to file the petition. And the embassy then notified the chief, the U.S. embassy, which then notified the chief judge of the Broward Circuit Court. That that's the point that we should look at. And that's pretty early on in the process. That, as I understand, is December of 2022, which is basically a year and a half or a year and 10 months or so for the child being here. Is that is that the point that we should look at? I do. I do believe so. And when you say that's early in the process, I don't think that's that early. Different than three years. That's different than three years in a four year old's life. No, I will credit Mr. Newman's client with evidencing the intent to establish his rights. But I still think he waited a very long time. I'm not I understand that he did it the wrong way, but I don't think that should be held against him. I think he just made that mistake. What I assume that that was admitted in the lower courts trial because it evidences intent. But I think the stumbling block that I have to face is that this court or the district court. Still retain that ability to find that a child is now been here for three years, is well settled, is living with parent, grandparents and all of those things. And there's lots of evidence to to infer that the father intended to move here and stay here. But but the court can still even making a finding in my favor and still just decide, well, I'm going to send her back anyway. And I believe that was error. Sorry, as part of that argument, the statement that you just gave, are you acknowledging that as a matter of law, he has that discretion? You simply disagree today in the manner that he exercised it. I would have to do that, Judge. Yes. But I'm asking this court. If we're down to it, I suppose I'm asking this court to change the law. And it's you know, we talk about case law, but what we're really talking about is your case law. And this court makes changes when it when it gets a factual scenario under which it should make changes. And I think it could make that change in this in this circumstance. Okay, very well, Mr. Fletcher, do you have anything further? That's all I have. Okay, thank you both. Mr. Fletcher. Mr. Newman. We appreciate your presentations today. Thanks for accommodating the zoom hearing and we will be in recess. Thank you both. Thank you.